J-S10007-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                          :            PENNSYLVANIA
                                          :
               v.                          :
                                          :
SHAWN N. MCCOY                    :
                                          :
            Appellant                 :      No. 957 MDA 2024

Appeal from the PCRA Order Entered June 13, 2024
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0003462-2015

BEFORE:  BOWES, J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                 **FILED: MAY 29, 2025**

Shawn N. McCoy appeals from the order that dismissed as untimely his serial Post Conviction Relief Act ("PCRA") petition.  We affirm in part, vacate in part, and remand for further proceedings.

On the night of April 7, 2015, Appellant drank until closing time at Shady McGrady's bar in Harrisburg with Sharayne Cook and Yusuf Blake.  Upon leaving in the early morning hours of April 8, 2015, Appellant and Blake went to the car while Cook stopped to speak to two other bar patrons, Jamie Jones and Duane Dunlap.  Appellant and Blake exited the car with firearms.  Blake robbed Dunlap, while Appellant hit Jones in the head with a gun and robbed him after he fell to the ground.  Cook then drove the assailants from the scene. A witness to the robbery called 911.  Police, including Officer Angel Diaz, responded, and Appellant fired at the police vehicle during a subsequent high-

speed chase. After damaging the police vehicle, the three suspects later fled on foot. Police apprehended Blake and Cook, who both identified Appellant as the third member of their group. Jones described his assailant to police by skin tone, large tattoo on his neck, and nickname of "Shizz," then positively identified Appellant by his photograph that was shown on the television news. Ultimately, Appellant turned himself in.

At the preliminary hearing and trial, Jones confirmed the description of his attacker but declined to identify Appellant as the man who robbed him. Consequently, at trial the Commonwealth called as a witness the assistant district attorney who attended the preliminary hearing, Jennifer Hartlep, Esquire, to testify that Jones indicated that his reluctance to identify Appellant was due to threats he had received on his life. Based upon irregularities in the manner and content of Attorney Hartlep's testifying, including her indication that Jones mentioned Appellant's neck tattoo was of the number 500, the trial court granted Appellant's request for a mistrial.

At a retrial, Jones once more declined to make an in-court identification of Appellant, claiming that his intoxication and concussion on the night in question left him less than certain about who robbed him. Attorney Hartlep again testified that Jones indicated to her that he had been threatened. The Commonwealth further offered the testimony of Cook and other evidence indicating that Appellant's nickname was Shizz, his DNA was found on an item in the getaway car, photographs on an iPhone found in the car showed

Appellant holding a pistol and displaying a "500" tattoo on his neck, and he had access to the caliber of weapon used in the shooting, which matched a firearm missing from his girlfriend's home. A jury convicted Appellant of various crimes related to the incident, and he was sentenced to twenty-eight to sixty years of imprisonment.

On direct appeal, Appellant challenged the sufficiency of the evidence to sustain his convictions, the propriety of the admission of Attorney Hartlep's testimony, and the legality of his sentence. This Court held that Appellant waived challenges to Attorney Hartlep's testimony about Jones's statements regarding the tattoo and claim of threats by failing to object, and denied relief as to her testimony concerning Jones's specific identification of Appellant upon finding the error to be harmless.[1] *See Commonwealth v. McCoy*, 179 A.3d 584, 2017 WL 4711964, at *5-6 (Pa.Super. 2017) ("*McCoy I*") (unpublished memorandum). In the end, this Court vacated one of his convictions and remanded for resentencing. *Id*.

While awaiting resentencing, Appellant prematurely filed a *pro se* PCRA petition. Therein, he alleged that trial counsel was ineffective in failing to: (1) file a motion to suppress; (2) object to Attorney Hartlep's testimony; (3)

---

[1] The docket reflects that, prior to the retrial, counsel did file a motion to preclude Attorney Hartlep's reference to Jones's mention of the "500" tattoo and threats on his life. *See* Docket Entry, 6/20/16, "Motion to Dismiss Pursuant to Pa.R.C.P.573(e) and/or Suppress Reference to Defendant's Tattoo." However, the motion itself does not appear within the certified record.

object to the in-court identification by Officer Diaz; and (4) seek a corrupt source jury charge as to Cook. **See** Brief for Petitioner, 5/8/18, at 4.

On September 17, 2018, the court resentenced Appellant to a term of twenty-seven and one-half to fifty-seven years of imprisonment pursuant to this Court's remand order. Notably, at the conclusion of the sentencing hearing, Appellant's counsel twice informed the court that Appellant would forgo a challenge to the discretionary aspects of his new sentence in order to immediately pursue his PCRA claims. **See** N.T. Resentencing, 9/17/18, at 11-12, 14. In this vein, Appellant filed a *pro se* motion to renew his PCRA petition on October 3, 2018. Accordingly, the PCRA court appointed counsel who filed an amended petition on February 1, 2019, limited to the jury instruction issue. The court dismissed the petition after conducting a hearing, and this Court affirmed. **See Commonwealth v. McCoy**, 253 A.3d 312, 2021 WL 1616221 (Pa.Super. 2021) ("**McCoy II**"), *appeal denied*, 274 A.3d 1221 (Pa. 2022).

On July 19, 2022, Appellant filed in the PCRA court a motion to remand to allow him to challenge the performance of PCRA counsel in failing to pursue claims raised in the *pro se* petition. The court treated Appellant's filing as a new PCRA petition and appointed counsel.[2] When that attorney failed to file

---

[2] Appellant does not dispute that his motion for remand, filed when no appeal remained pending, was properly deemed to be a PCRA petition. **See**, **e.g.**, **Commonwealth v. Taylor**, 65 A.3d 462, 466 (Pa.Super. 2013) ("[A]ll motions filed after a judgment of sentence is final are to be construed as PCRA petitions.").

an amended petition, the court appointed new counsel. Appellant responded with a request to represent himself and an amended PCRA petition. Following a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998), the court granted Appellant *pro se* status but appointed standby counsel.

A flurry of *pro se* motions and amended petitions followed. In addition to alleging various layered claims of the ineffectiveness of PCRA and trial counsel, including the failure to call Blake as a trial witness, Appellant alleged that the Commonwealth violated **Brady v. Maryland**, 373 U.S. 83 (1963), by intentionally withholding from him the statement that Jones gave to Attorney Hartlep about his attacker having the number 500 tattooed on his neck. **See** Motion to Amend, 4/17/24, at 24-25. Appellant also asserted an after-discovered evidence claim based upon the newly-discovered fact that a fellow-inmate of Appellant named Jonathan Brooks witnessed Blake, and not Appellant, commit the robbery, and also spoke to Jones about it, during which conversation Jones acknowledged that the only reason he showed up to court was because Attorney Hartlep told him there was a price on his head if he did not identify Appellant. **See** Motion to Amend, 4/17/24, at 30 and Exhibit C (statement of Jonathan Brooks dated 8/2/23).

On May 22, 2024, the PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition as untimely without a hearing. Appellant immediately requested a sixty-day extension of time to respond, which the court denied. Nonetheless, Appellant filed a timely response complaining that

the PCRA court should not have examined the timeliness of the petition when the Commonwealth conceded the applicability of an exception, and arguing that his first PCRA petition should be deemed a continuation of his direct appeal and the instant petition considered his first, timely PCRA petition.

The PCRA court dismissed Appellant's petition by an order filed June 13, 2024, and this timely appeal followed.[3] The PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) statement, and none was filed. The court issued a statement referring us to its May 22, 2024 notice of intent to dismiss to explain its reasoning.

This Court remanded the case upon the motion of standby counsel to determine whether Appellant wished to represent himself on appeal, eventually culminating in an order from the PCRA court specifying that counsel would represent Appellant in this Court. In this manner, Appellant presents the following questions for our review:

> A. Whether the [PCRA] court erred in dismissing Appellant's PCRA [petition] as being untimely filed, without a hearing, where Appellant presented sufficient evidence of a timeliness exception.
>
> B. Whether the [PCRA] court erred in dismissing Appellant's PCRA [petition] as being untimely filed where [he] was alleging PCRA counsel's ineffective representation at the first possible moment and in the spirit of [**Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021)].

Appellant's brief at 4 (unnecessary capitalization omitted).

---

[3] The docket notation of service upon the parties post-dates the appeal.

We begin with the governing legal principles. This Court will "review an order dismissing or denying a PCRA petition as to whether the findings of the PCRA court are supported by the record and are free from legal error." **_Commonwealth v. Howard_**, 285 A.3d 652, 657 (Pa.Super. 2022) (cleaned up). "It is an appellant's burden to persuade us that the PCRA court erred and that relief is due." **_Commonwealth v. Stansbury_**, 219 A.3d 157, 161 (Pa.Super. 2019) (cleaned up).

It is well-settled "that the timeliness of a PCRA petition is jurisdictional and that if the petition is untimely, courts lack jurisdiction over the petition and cannot grant relief." **_Commonwealth v. Fantauzzi_**, 275 A.3d 986, 994 (Pa.Super. 2022). Any PCRA petition must be filed within one year of the date that the underlying judgment of sentence became final unless the petitioner pleads and offers to prove one of the following enumerated timeliness exceptions:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1). Further, a petition invoking a timeliness exception "shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

As we observed in **McCoy II**, Appellant's judgment of sentence became final on October 17, 2018, when he did not file a direct appeal within thirty days of being resentenced. **See McCoy II**, 2021 WL 1616221, at *3 n.5. The instant petition, filed in 2022, was thus patently untimely. On appeal, Appellant focusses his arguments on the newly-discovered facts and governmental interference exceptions, along with our Supreme Court's decision in **Bradley**.

Addressing them in reverse order, in **Bradley**, our Supreme Court provided a procedure for petitioners to vindicate their rule-based right to the effective assistance of PCRA counsel by allowing the petitioner to challenge counsel's stewardship at the first opportunity during the pendency of that petition. Our High Court has remained adamant that **Bradley** did not establish a new timeliness exception to provide jurisdiction for a subsequent PCRA petition. **See**, **e.g.**, **Commonwealth v. Laird**, 331 A.3d 579, 598 (Pa. 2025) ("**Bradley** did not create an exception to the PCRA's time-bar, and we expressly decline to create one today."). Appellant had the opportunity to challenge his first PCRA counsel's ineffectiveness by filing a motion for remand while the PCRA appeal remained pending. Instead, he waited until the appeal

concluded to file that motion. Hence, ***Bradley*** cannot be utilized to establish jurisdiction for his attacks upon PCRA counsel's performance.

Appellant's invocation of the governmental interference exception is likewise unavailing. As the PCRA court observed, Appellant founded his related ***Brady*** claims upon information that was withheld from him before his first trial but was known to him before his retrial. Indeed, the testimony from Attorney Hartlep, a surprise, non-sequestered witness, is what precipitated the mistrial. To ensure Appellant was fully informed of the withheld evidence, she testified in a hearing immediately following the mistrial, at the trial court's suggestion and subject to cross-examination, about her off-the-record conversations with Jones in which he claimed to have recognized Appellant's tattoo. ***See*** N.T. Post-Trial Hearing, 4/21/16, at 6-21. Appellant has not alleged facts showing that the government interfered with his ability to bring these claims earlier, such as on direct appeal or in his first PCRA petition. Therefore, the PCRA court properly ruled that § 9545(b)(1)(i) does not supply jurisdiction for his ***Brady*** claims.

This leaves Appellant's contention that the instant PCRA petition was timely filed after the discovery of the previously unknown facts that: (1) Brooks had personally witnessed the robbery and could attest that Appellant did not participate in it; and (2) that Jones admitted to Brooks that his identification of Appellant was coerced by the Commonwealth. Regarding his due diligence in discovering these facts, Appellant pled as follows:

From the moment Appellant started his sentence, [he] pressed for evidence to prove his innocence. He had no money to pay for assistance. There were no funds for an investigator so [Appellant] had to do it all by himself. [He] wrote countless letters to different organizations—innocent projects, and various social media outlets all over America. And, he made fl[y]ers trying to get help. He made it part of his daily routine. He visited the law library three times a week at whatever time slots [were] available.

In desperation to set himself free from his unjust incarceration and find new evidence to bolster his innocence, [Appellant] asked friends and associates and/or anyone who would help pass out fl[y]ers around the neighborhood asking anyone with information about the tragic incident to come forward. Because attempting to locate or interview witnesses could be dangerous, [Appellant] decided to never put his family in that kind of predicament. [He] devoted every inch of fight that he had in himself to spread this information to see if he [could] get someone to come forward. . . .

[Appellant]'s diligence in pursuing evidence to establish his innocence eventually paid off. [He] posted fl[y]ers on each block of the institution asking anyone with information to come forward. By happenstance a critical witness belatedly responded to [the] fl[y]er. As a result, [Appellant] now files his serial petition after learning about this new piece of evidence bolstering his innocence.

Motion to Amend, 4/17/24, at 28-29 (cleaned up).[4]

The PCRA court explained its rejection of Appellant's invocation of the § 9545(b)(1)(ii) exception thusly:

---

[4] While the record contains no order expressly granting Appellant's motion to amend his petition, the PCRA court described the motion as an amended petition when addressing the issues therein in its Rule 907 notice. **See** Notice of Intent to Dismiss, 5/22/24, at 3. The court thereby implicitly granted the motion to amend. **See Commonwealth v. Kennedy**, 264 A.3d 386, 2021 WL 4279775, at *1 n.5 (Pa.Super. 2021) (non-precedential decision) ("[W]e conclude that the PCRA court implicitly permitted Appellant to amend his petition by considering the issues contained in the amended PCRA petition[.]").

- 10 -

[Appellant] misapprehends the relationship of due diligence to the newly[-]discovered fact timeliness exception. **He presents us with his own due diligence, but that is not the issue**. The statute is concerned with whether this potential evidence, the testimony of . . . Brooks, could have been ascertained at an earlier time by exercising the same type of due diligence he has now claimed to conduct. In other words, would it not have been possible for [Appellant]'s trial counsel to find . . . Brooks? [Appellant]'s own petition suggests it would have been very possible. Apparently, . . . Brooks was amenable to coming forward based on nothing more than seeing a flyer. We cannot imagine why a thorough investigation in preparation for trial could not have uncovered him earlier. Once again, [Appellant] is attempting to shape an ineffectiveness claim into a newly[-]discovered fact claim to skirt the fact that his PCRA is untimely.

Notice of Intent to Dismiss, 5/22/24, at 7-8 (emphasis added).

Appellant assails the PCRA court's ruling by observing: "Appellant did not know of the identity of Brooks until he contacted Appellant. How do you search for someone you do not know exists?" Appellant's brief at 15. Noting that due diligence is a fact-specific inquiry that requires only reasonable efforts by the petitioner to uncover facts that could support a claim, he faults the court for rejecting Appellant's invocation of the § 9545(b)(1)(ii) exception without granting a hearing. *Id*. at 15 (citing *Commonwealth v. Brensinger*, 218 A.3d 440, 449 (Pa.Super. 2019)).

We agree with Appellant that it is the PCRA court that has misapprehended the law by looking beyond Appellant's actions in the due diligence assessment. We have explained:

Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. Due diligence demands that **the petitioner** take reasonable steps

- 11 -

to protect his own interests. . . . [The exception] requires a petitioner to allege and prove that there were facts unknown to him and that **he** exercised due diligence in discovering those facts.

*Commonwealth v. Howard*, 285 A.3d 652, 660 (Pa.Super. 2022) (cleaned up, emphases added). *See also Commonwealth v. Bennett*, 930 A.2d 1264, 1270 (Pa. 2007) (explaining that the exception "simply requires [a] petitioner to allege and prove that there were 'facts' that were 'unknown' to him and that he exercised 'due diligence'").

The PCRA court is correct that a petitioner cannot assert a claim of ineffectiveness *per se* as the basis for a timeliness exception. However, that **counsel's** failure to uncover the fact earlier might be construed as ineffective assistance does not defeat the claim that **the petitioner** exercised due diligence in discovering it himself. In other words, the mere association of ineffectiveness with the § 9545(b)(1)(ii) exception does not preclude its application. *See*, *e.g.*, *Bennett*, 930 A.2d at 1274 (holding that the petitioner alleged sufficient facts that, if proven, would satisfy the exception where he pled that he was unaware that his PCRA appeal had been dismissed because counsel failed to file a brief, he detailed "the steps he took to ascertain the status of his case," and he filed the petition promptly after discovering the dismissal).

Accordingly, while we affirm the dismissal of the remainder of Appellant's substantive claims, we vacate the PCRA court's dismissal order insofar as it dismissed Appellant's claim concerning Brooks, and remand for

the court to conduct a hearing at which Appellant must prove all elements of the newly-discovered facts timeliness exception. If the court concludes that Appellant in fact was unaware of the fact that Brooks had the information detailed in Brooks's statement and personally exercised due diligence in discovering it, then it shall proceed to conduct a hearing on Appellant's after-discovered evidence claim.

Order affirmed in part and vacated in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/29/2025